**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| INTERSTATE BATTERIES, INC.; RETAIL ACQUISITION AND DEVELOPMENT, INC. (DBA INTERSTATE ALL BATTERY CENTERS) | : : : : |
| Plaintiffs, | : : |
| v. | :   Court No. 20-00223 |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION, | : : : : : |
| Defendants. | : : : |

**COMPLAINT**

Plaintiffs Interstate Batteries, Inc. ("Interstate Batteries") and Retail Acquisition and Development, Inc. (dba Interstate All Battery Centers) ("RAD"), by and through its attorneys, allege and state as follows:

1.     The instant action concerns the unlawful expansion of the scope of Section 301 of the Trade Act of 1974 by imposing tariffs on imports from the People's Republic of China included on what has commonly been referred to as List 3 (accounting for an approximate trade value of $200 billion) and List 4A (accounting for an approximate trade value of $300 billion). *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (publishing List 3); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019) (publishing List 4A).  Neither the Trade Act of 1974 ("Trade

Act") nor the Administrative Procedure Act ("APA") authorizes the imposition of import duties beyond the remedial purpose provided by statute. The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A.

## JURISDICTION

2.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

3.      Plaintiffs Interstate Batteries and RAD are importers of static converters and electric storage batteries. Plaintiffs are the importer of record of many products imported subject to List 3 and List 4A. By way of example, Plaintiffs made numerous entries of static converters under HTSUS subheading 8504.40.9510, which is subject to *ad valorem* duties under List 3 and electric storage batteries under HTSUS subheading 8507.60.0020, which is subject to additional *ad valorem* duties under List 4A.

4.      Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

5.      The Office of the United States Trade Representative ("USTR") is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction

of the President.  USTR conducted the Section 301 investigation at issue and made numerous

decisions regarding List 3 and List 4A.

6.    Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects

duties on imports.  CBP collected payments made by Plaintiffs to account for the tariffs imposed

by USTR under List 3 and List 4A.

## STANDING

7.    Interstate Batteries and RAD have standing to sue because they are "adversely

affected or aggrieved by agency action within the meaning of" the APA.  5 U.S.C. § 702; *see* 28

U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has

jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved

by agency action within the meaning of Section 702 of title 5.").  Tariffs imposed by Defendants

pursuant to Lists 3 and 4A adversely affected and aggrieved Interstate Batteries and RAD

because they were required to pay these impermissible duties.

## TIMELINESS OF THE ACTION

8.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two

years after the cause of action first accrues."  28 U.S.C. § 2636(i).

9.    The instant action contests two actions taken by Defendants, which resulted in the

imposition of List 3 and List 4A.  *Notice of Modification of Section 301 Action:  China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83

Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action:  China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84

Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019).  As to the action resulting in List 3, Plaintiffs'

claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in

the *Federal Register*.  83 Fed. Reg. 47,974.  As to the action resulting in List 4A, Plaintiffs' claims accrued at the earliest on August 20, 2019, when USTR published notice of List 4A in the *Federal Register*.  84 Fed. Reg. 43,304.  Plaintiffs have therefore timely filed this action.

**RELEVANT LAW**

10.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.    19 U.S.C. § 2411(b).    If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id.* § 2411(b), (c)(1)(B).

11.    Section 307 of the Trade Act allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act under certain circumstances, such as when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* § 2417(a)(1)(B), (C).

**PROCEDURAL HISTORY**

**I.    USTR's Investigation**

12.    On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" regarding intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to

our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

13.     Four days later, USTR formally initiated an investigation on August 18, 2017 into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

14.     Seven months later, USTR released a report on March 22, 2018 announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018)     ("Section     301     Report"),     *available     at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.   USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.   USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. companies to Chinese companies on terms that favor Chinese recipients, *id.* at 55; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's

cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

15.     On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.        USTR   also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.     Lists 1 & 2

16.     Between April and August 2018, Defendants acted in earnest to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called List 1 (accounting for an approximate trade value of $34 billion) and List 2 (accounting for an approximate trade value of $16 billion).

17.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin."  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018."  *Id.* at 14,907.  USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

18.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1."  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion."  *Id.* at 28,711.

19.     At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation.  *Id.*  USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion."  *Id.* at 28,711-12.

20.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823 (Aug. 16, 2018).

## III.    List 3

21.     Beginning in March 2018, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion.  Defendants did so for reasons unrelated to the unfair practices that USTR had investigated within the Section 301 investigation.

22.     On June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion, despite USTR having not yet implemented List 1 and List 2.

23.     USTR stated that it would design the proposed duties on $200 billion in goods from China to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0. (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

24.     Despite these warnings from Defendants, China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

25.     A little over a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).  As authority for its proposed action, USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).  USTR initially set a deadline of August 17, 2018 for initial comments; August 20 to 23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.  *Id*. at 33,608.

26.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion of trade value in its proposed action to the level of retaliatory duties imposed by China on U.S. imports,

noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices related to technology transfer, intellectual property, and innovation that USTR had investigated nor did USTR suggest the additional trade value represented by List 3 and List 4A tariffs was commensurate with harm caused to the United States subject of the Section 301 investigation. *See id.*

27.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action, without mention of the necessity for such additional tariffs to remedy harm identified in the Section 301 investigation. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

28.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that USTR investigated pursuant to Section 301, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

*Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018),

*available             at*                 https://ustr.gov/about-us/policy-offices/press-office/press-

releases/2018/august/statement-us-trade-representative.

29.     Shortly thereafter, USTR formally proposed "rais[ing] the level of the additional

duty in the proposed supplemental action from 10 percent to 25 percent."  *Extension of Public*

*Comment Period Concerning Proposed Modification of Action Pursuant to Section 301:  China's*

*Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).   USTR set new dates for a public

hearing over six days ending on August 27, 2018.  *See id.*; *see also* OFFICE OF THE UNITED

STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17,

2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-

office/press-releases/2018/august/public-hearings-proposed-section-301.

30.     At the same time, USTR adjusted the deadlines for the submission of written

comments, setting September 6, 2018 as the new deadline for both *initial and rebuttal* comments

from the public.  *Id.* at 38,761.  That adjustment prevented both USTR and the public from

considering initial comments at the hearing, and left insufficient time for interested parties to

review and respond to the initial comments filed by other parties.   USTR also limited each

hearing participant to five minutes.  *Id.*  Approximately 350 witnesses appeared at the six-day

hearing,   and   the   public   submitted   over   6,000   comments.     List   3   Docket,

https://www.regulations.gov/docket?D= USTR-2018-0026.

31.     USTR published notice of another list of products subject to an additional duty, a

list commonly known as "List 3."  83 Fed. Reg. 47,974.  USTR imposed a 10% *ad valorem* tariff

that was set to rise automatically to 25% on January 1, 2019.  *Id.* at 47,975.  USTR determined

that the additional duty would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received nor did it address any of the testimony provided by roughly 350 witnesses pursuant to the hearing and comment period on this action. *Id.*

32.    As legal support for its action, USTR first raised Section 307(a)(1)(B) of the Trade Act as justification, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under [Section 301] if . . . the burden or restriction on United States commerce of the denial [of] rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* at 47,974. USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.*

33.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of*

*Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

34.     The trade negotiations ultimately fell apart.  In May 2019, USTR announced its intent to raise tariffs on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments made in earlier rounds [of negotiations]" as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  USTR did not seek public comment but simply announced that the increase would occur.  *Id.*  In June 2019, USTR invited the public to seek exclusions from List 3 duties on a product-specific basis.  *Procedures for Requests To Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).  USTR's request for comments for exclusions from List 3 tariffs stated that any "exclusion will be effective starting from the September 24, 2018, the effective date of the September 2018 action, and extending for one year after the publication of the exclusion determination."  *Id.*

35.     USTR later amended the duration of its List 3 exclusions to be valid only until August 7, 2020 on the basis that adhering to a one-year exclusion would create disparities between exclusions granted at different times. *Notice of Product Exclusions, Amendment to the Exclusion Process, and Technical Amendments: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 49,591 (Sept. 20, 2019).

36.     USTR received in excess of 30,000 requests for exclusion from List 3 tariffs and published its decisions through a series of notices from August 7, 2019 to June 19, 2020.  Over 28,000 of these requests were denied.

37.     In May and June, 2020, USTR published its procedure for parties to request renewals of exclusion requests previously granted under List 3.  *Requests for Comments Concerning the Extension of Particular Exclusions Granted Under the $200 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 27,011 (May 6, 2020); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $200 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 34,279 (June 3, 2020).  USTR indicated that it would "evaluate the possible extension of each request on a case-by-case basis." *Id*.

38.     On August 11, 2020, USTR published its notice granting particular exclusion extensions under List 3.  *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 48,600 (Aug. 11, 2020).  No justification was provided for why certain exclusion renewal requests were denied.

39.     The duties imposed on products covered by List 3 remain in effect as of the date of this complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties.

**IV.    List 4A**

40.    Eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list – List 4 – covering even more products subject to additional.   Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth an estimated trade value of $300 billion.   *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).   USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

41.    Similar to the process it followed for List 3, USTR invited the public to comment on the proposed List 4 and participate in a hearing.   *Id.*   The public submitted nearly 3,000 comments.   List 4 Docket, https://beta.regulations.gov/document/USTR-2019-0004-0001.   The timeline for participation in the hearing left little room for meaningful input:   USTR required witnesses to submit drafts of their testimony by June 13, 2019, some four days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing.

42.    On August 20, 2019, USTR issued a final notice adopting List 4 splitting the list of impacted products into two tranches, List 4A and List 4B.   *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).   List 4A would impose a 10% *ad valorem* duty on goods worth roughly $112 billion, effective September 1, 2019.   *Id.*   List 4B

15

would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to state that its determination "takes account of the public comments and the testimony." *Id.* at 43,305.

43.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that provision allows it to modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304.  But instead of finding any increased burden on U.S. commerce imposed by the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

44.     Ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4, "China responded by announcing further tariffs on U.S. goods." *Id.*  USTR also once again cited China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

45.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of

additional duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447 (Dec. 18, 2019).  USTR also stated its intent to reduce by half the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

46.     In October 2019, USTR invited the public to seek exclusions from List 4A duties on a product-specific basis.  *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (October 24, 2019).

47.     USTR received in excess of 8,700 requests for exclusion from List 4A tariffs and published its decisions through a series of notices from March 10, 2020 to August 5, 2020.  Over 8,200 of those requests were denied.

48.     From June through August, 2020, USTR published its procedure for parties to request renewals of exclusion requests previously granted under List 4A.  *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 38,482 (June 26, 2020); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 43,639 (July 17, 2020); *Request for*

*Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 48,595 (Aug. 11, 2020).   USTR indicated that it would "evaluate the possible extension of each request on a case-by-case basis." *Id*.

49.     On September 2, 2020 USTR published its notice granting particular exclusion extensions under List 4A.   *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 54,616 (Sept. 2, 2020).   No justification was provided for why certain exclusion renewal requests were denied.

50.     The duties imposed on products covered by List 4A remain in effect as of the date of this complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 4A duties

## STATEMENT OF CLAIMS

### COUNT ONE

### (VIOLATION OF THE TRADE ACT OF 1974)

51.     Paragraphs 1 through 50 are incorporated by reference.

52.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

53.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate."

19 U.S.C. § 2411(b).  USTR failed to predicate its actions giving rise to List 3 and List 4A on any such determination.

54.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action to take, if any," within "12 months after the date on which the investigation is initiated."  19 U.S.C. § 2414(a)(1)(B), (2)(B).  USTR's actions giving rise to List 3 and List 4A occurred in September 2018 and August 2019, respectively, well over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

55.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act when the burden or restriction imposed on U.S. commerce by the investigated foreign country's unfair acts, policies, or practices increases or decreases.  19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs imposed pursuant to an investigation conducted pursuant to Section 301 of the Trade Act for reasons unrelated to the acts, policies, or practices that USTR investigated.   Congress did not provide authorization to USTR to expand its focused investigatory findings.

56.     Section 307 also authorizes USTR to "modify or terminate" an action under Section 301(b) if the initial action taken by USTR "is no longer appropriate."   19 U.S.C. § 2417(a)(1)(C).  Section 307 of the Trade Act, however, does not provide Defendants with the authority to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

57.     Plaintiffs are therefore entitled to a holding that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

**COUNT TWO**

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

58.     Paragraphs 1 through 57 are incorporated by reference

59.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

60.     Defendants' exceeded their statutory authority in promulgating List 3 and List 4A and therefore acted unlawfully when publishing and collecting duties on imports of products on List 3 and List 4A.

61.     Defendants also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.  Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A whose value exceeds $500 billion.

**COUNT THREE**

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

62.     Paragraphs 1 through 61 are incorporated by reference.

63.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

64.     In its June 24, 2019 request for comments for exclusions from List 3 tariffs, USTR stated that any exclusion would extend for one year after publication of the exclusion determination.  USTR later modified the duration of its exclusions on September 20, 2019, stating that any granted exclusions would be valid only until August 7, 2019 on the basis that adhering to one-year exclusions would create disparities between exclusions granted at different times.

65.     Because Defendants failed to adequately explain their rationale behind the premature termination of List 3 exclusions, and identify the facts on which it based its conclusion that a consistent exclusion period was required across all granted exclusions, the action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and must be set aside under 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

(1)     hold that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the laws of the United States;

(2)     order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A;

(3)     award Plaintiffs their costs and reasonable attorney fees; and

(4)     grant such other and further relief as may be just and proper.

Respectfully submitted,

John B. Brew

Dated:  September 17, 2020

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004

*Counsel to Interstate Batteries, Inc. and Retail Acquisition and Development, Inc. (dba Interstate All Battery Centers)*

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on September 17, 2020, copies of the foregoing Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

John B. Brew